CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 9 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM A. WHITE, ) | Civil Action No. 7:05-cv00020 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| VICTORIA B. HAINES, ) | |
| DEBRA E. McGHEE, and ) | |
| ALPHONSO R. JACKSON, ) | |
| *Secretary of the Department of Housing and* ) | |
| *Urban Development*, ) | |
| ) | By: James C. Turk |
| Defendants. ) | Senior United States District Judge |

Plaintiff William A. White brings this action under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), against defendants Victoria B. Haines, Debra McGhee and Alphonso Jackson. He claims that defendants, in their individual and official capacities as federal officers of the Housing and Urban Development (HUD) agency, retaliated against him and violated his First Amendment right to free speech by investigating whether, as a landlord, his rental practices discriminate against blacks. White seeks compensatory and punitive damages, and requests that HUD stop its investigation. This matter is before the court on defendants' motion to dismiss. The court finds that White fails to state a claim upon which relief may be granted as to the Bivens action pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, the court finds that White's claim against defendants in their official capacities as representatives of HUD is barred by the doctrine of sovereign immunity. However, he may wish to file a claim against HUD concerning defendants' acts in their official capacity pursuant to the Federal Tort Claims Act (FTCA)—the proper civil action for such claims. Therefore, the court will grant defendants' motion to dismiss with prejudice the claim as to their individual capacities, and without prejudice

as to their official capacities.

I.

White alleges the following facts. White owns and rents residential property in Roanoke, Virginia. He avers that a former girlfriend held public meetings in a Roanoke library where White was accused of being a "neo-Nazi," and that these meetings incited a former tenant to accuse him of evicting her because she is black. White denies that he evicted her because of her race, and avers that she was evicted because she had no lease and had not paid rent. White's former tenant filed a formal complaint against him at the Roanoke chapter of the National Association of the Advancement of Colored People (NAACP). The NAACP then filed a fair housing complaint at HUD, which in turn sparked an agency investigation into his rental practices. He maintains that the complaint is meritless and is merely a retaliatory attempt by the NAACP to halt operation of his website, which he believes antagonizes a number of political organizations because he uses the site to post his anti-Semitic views. He claims that by relying on the NAACP's complaint as grounds to investigate him, HUD's motive was merely to adopt and carry out the NAACP's retaliatory strategy to suppress his First Amendment right to speech on the site.[1] White does not however allege any specific harm that his speech on the site was in

---

[1] White asserts that HUD's investigation improperly involved random contact with his tenants and included the following. Specifically, Haines sent a letter dated December 10, 2004 to White requesting tenant records, to which he did not comply. Haines then sent letters dated January 7, 2005 to each household on the 1600 block of Chapman Avenue in Roanoke City, the location of several of White's rental units, asking for participation in HUD's investigation of White's rental practices to determine whether he racially discriminates. White avers that the letters were authorized by McGhee, the Chief of the Enforcement Branch of the Baltimore Office of Fair Housing and Equal Opportunity. He also maintains that approval by Jackson, the Secretary of HUD, was necessary in order for McGhee and Haines to carry out the investigation.

2

fact suppressed, or otherwise adversely affected because of HUD's investigation. Additionally, he claims that the NAACP may not file a fair housing complaint because it is an organization and not a current or former tenant of his, and that therefore HUD incorrectly considered it to be an aggrieved party who may otherwise file such a complaint. He sues defendants in their individual and official capacities; and seeks compensatory damages of $10,000, punitive damages of $50,000, and that HUD terminate its investigation until it identifies a proper aggrieved party and specific instances of racial discrimination.[2]

## II.

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss should not be granted unless it is clear as a matter of law, after accepting the facts alleged in the complaint as true and construing the allegations in the light most favorable to the plaintiff, that the court could not grant relief under any set of facts the plaintiff could prove consistent with his allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Revene v. Charles County Comm'rs. 882 F.2d 870, 872 (4th Cir. 1989). Construing the facts and allegations presented by White in his favor, there is no way he could be granted relief. See Fed. R. Civ. P. 12(b)(6). The court finds that White's allegations fail to state a claim upon which relief may be granted pursuant to Rule 12 (b)(6).

### A.

In order to recover in a Bivens action, a plaintiff must make a claim that a federal officer acted beyond the bounds of his or her formal position, and that in doing so, he or she violated

---

[2]At an in-chambers status conference on October 12, 2005, HUD informed the court that it has stopped its investigation of White's rental practices until the disposition of this case; White's counsel did not contest or otherwise object to this as false.

3

plaintiff's federally protected constitutional rights. See Bivens 403 U.S. at 397. White attempts to bring his claim against defendants in both their individual and official capacities as officers of HUD; but White may not sue defendants in their official capacities in a Bivens action because the doctrine of sovereign immunity bars his claim. See 28 U.S.C. § 1346; 5 U.S.C. § 702 (2005). However, under the Federal Tort Claims Act (FTCA) Congress waived in part sovereign immunity against the United States where a plaintiff seeks damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, the FTCA is the proper form of action in which to seek redress against government employees in their official capacities. See id.; see also, 5 U.S.C. § 702. Furthermore, in order to bring a tort action against HUD pursuant to the FTCA based on its employees' acts, White must first exhaust his administrative remedies at HUD, which he fails to allege that he has done. See 5 U.S.C. § 702. Therefore, the court will dismiss his claim against defendants in their official capacities without prejudice. See 28 U.S.C. § 1346; 5 U.S.C. § 702 (2005); see generally, Reynolds Assoc., v. Kemp, 1992 U.S. App. LEXIS 20727, *8-12 (4th Cir. 1992) (unpublished) (finding that no tort action may be pursued against the U.S. unless plaintiff first exhausts administrative remedies, and that the Secretary of HUD may not be sued for damages where an award would constitute one against the government). White may wish to refile this portion of his claim as provided by the FTCA after exhausting his administrative remedies.

4

**B.**

Concerning White's claim against defendants in their individual capacities, he fails to show they acted outside the scope of their authority or that his First Amendment right to free speech on his site has been violated by HUD's investigation, or that HUD's investigation was at all retaliatory. A plaintiff must show the following three elements in order to state a First Amendment retaliation claim: (1) plaintiff's speech was constitutionally protected; (2) defendant's alleged retaliatory action adversely affected plaintiff's constitutionally protected speech; and (3) a causal relationship between plaintiff's speech and defendant's retaliatory action. Trulock v. Freeh, 275 F3d. 391, 404 (4th Cir. 2001) (citations omitted). Thus, all three elements of this test must be shown to state a First Amendment retaliation claim. See id. Accepting the facts and allegations in White's complaint as true, he shows only that the type of speech he posts on his site may possibly constitute that which is constitutionally protected—element (1). See generally, Huang v. Board. of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990). However, even were the court to find that White is able to establish that his speech on the site is protected, he fails to allege facts which show that HUD's actions were retaliatory and adversely affected the exercise of his speech—element (2); or that because of his anti-Semitic speech on the site, HUD was offended and therefore retaliated by investigating his rental practices—element (3). See Hishon, 467 U.S. at 73; Revene, 882 F.2d at 872.

First, White fails to show that defendants acted beyond the bounds of their official duties. See 28 U.S.C. § 1346; 5 U.S.C. § 702 (2005). White maintains that HUD's investigation to determine whether his rental practices discriminate against blacks was in retaliation for the anti-Semitic views he posts on his site. White appears to allege that HUD joined ranks with the

5

NAACP in a retaliatory strategy to suppress speech on his site because it is offensive. In support of his claim, White also alleges that HUD improperly considered the NAACP to be an aggrieved party who may otherwise file a fair housing complaint at HUD simply to provide a basis to investigate him. However, the Supreme Court has found the NAACP to be a proper aggrieved party who may file a fair housing complaint at HUD. Havens Realty Corp. v. Coleman, 455 U.S. 363, 374 (U.S. 1982) (finding that non-profit organizations whose purpose is to ensure fair and non-discriminatory housing practices, such as the NAACP, have standing to file complaints for Federal Housing Authority violations). Additionally, pursuant to 42 U.S.C. §3610 (a)(1)(B)(iv), the Federal Housing Authority mandates that HUD must act in response to all complaints within ten (10) days. Because the Roanoke Branch of the NAACP is a proper aggrieved party who may file a fair housing complaint at HUD, defendants acted in their official capacity when they began an investigation of White's rental practices in response to the NAACP's complaint in order to determine whether he in fact does discriminate against blacks. See id. Furthermore, White admits in his complaint that one of his former black tenants filed a formal complaint at the NAACP alleging that he evicted her because she was black; albeit his assertion that she was lying to the NAACP. Therefore, White fails to allege facts which show that defendants were acting in retaliation against White to suppress his speech by conducting a fair housing investigation of his rental practices. See Bivens 403 U.S. at 397; Fed. R. Civ. P. 12 (b)(6); Suarez Corp. Indus., v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000) (reasoning that not every reaction in response to an exercise of free speech is actionable retaliation, and that a "plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action") (citations omitted).

Second, White fails to allege that his speech has been adversely affected to any degree. In order to state a First Amendment retaliation claim, he "must demonstrate that defendants' actions had some adverse impact on the exercise of his constitutional rights." Suarez, 202 F.3d at 685. White alleges no infringement of his right to speech because of HUD's investigation. See id.; Trulock, 275 F3d. at 404. In fact, White fails to allege any harm whatsoever to his speech. White states merely a bald assertion that HUD's investigation is a strategy to suppress speech on his site; thus he fails to allege facts which show the necessary elements to state a First Amendment retaliation claim.[3] See e.g., Trulock, 275 F3d. at 404. Therefore, pursuant to Rule 12(b)(6) the court finds that he fails to state a claim upon which relief may granted. See Hishon, 467 U.S. at 73; Revene, 882 F.2d at 872.

## III.

For the reasons stated, the court grants defendants' motion to dismiss.

**ENTER**: This _9th_ day of December, 2005.

/s/ James C. Turk
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Defendants also responded to White's complaint in part by asserting the defense of qualified immunity. The court notes that because defendants were acting pursuant to their official HUD duties, they are additionally entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages, but ends when officials intentionally or knowingly violate a plaintiff's constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In this case, the court finds defendants have not violated White's constitutional rights because he has failed to allege that his speech has been adversely affected because of HUD's investigation. See note 1; see also, Bivens, 403 U.S. at 397; Havens, 455 U.S. at 374; Harlow, 457 U.S. at 818.

7